## COMMONWEALTH vs. KENNETH CUTTY.

No. 98-P-218.

Suffolk. February 22, 1999. - September 7, 1999.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Evidence,* Alibi, Relevancy and materiality, Credibility of witness. *Practice, Criminal,* Argument by counsel, Assistance of counsel, Instructions to jury. *Constitutional Law,* Assistance of counsel.

At a criminal trial in which credibility was the main issue, the judge's order to defense counsel not to argue alibi to the jury, a penalty for defense counsel's belated notice of alibi under Mass.R.Crim.P. 14, substantially impaired the defendant's constitutional rights to the assistance of counsel and to present a defense, as testified to by the defendant, and constituted reversible error. [674-678]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on August 6, 1996.

The case was tried before *Edward R. Redd,* J.

*J. Gregory Batten* for the defendant.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. On appeal from his May, 1997, convictions for assault and battery and threatening to commit a crime, the defendant contends that the trial judge committed reversible error in ordering defense counsel not to argue the defendant's alibi defense (that he was in Florida at the time the offenses occurred in Boston) in his summation to the jury. The judge's rationale for that order was to penalize the defendant for failure to comply with the "notice of alibi" procedures, pursuant to Mass.R.Crim.P. 14(b)(1)(A) & (D) and 14(c),[1] 378 Mass. 876-877, 880-881 (1979). We agree with the defendant that the

---

[1]Rule 14 pertinently provides:

"(b) SPECIAL PROCEDURES.

(1) *Notice of Alibi.*

judge's challenged ruling was an abuse of discretion that substantially impaired the defendant's constitutional rights to assistance of counsel and to present a defense.[2]

Six months before the scheduled trial, the prosecutor and defense counsel agreed to a pretrial conference report, which the judge adopted as an order. In that report, the Commonwealth specified the time, date, and place of the alleged offenses, and the defendant agreed that, if an alibi defense was to be offered, he would notify the Commonwealth, at least two weeks before trial and in writing, where he claimed to have been when the offenses occurred and to identify, by name, address, and date of

(A) Notice by Defendant. The judge may, upon written motion of the Commonwealth filed pursuant to subdivision (e) of this rule, stating the time, date, and place at which the alleged offense was committed, order that the defendant serve upon the prosecutor a written notice, signed by the defendant, of his intention to offer a defense of alibi. The notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish the alibi . . . .

(D) Failure to Comply. Upon the failure of either party to comply with the requirements of this rule, the judge may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense. *This rule shall not limit the right of the defendant to testify in his own behalf.*

(E) Exceptions. For cause shown, the judge may grant an exception to any of the requirements of subdivisions (b)(1)(A) through (D) of this rule . . . .

"(c) Sanctions for Noncompliance.

(1) *Relief for Nondisclosure.* For failure to comply with any discovery order issued pursuant to this rule, the judge may make a further order for discovery, grant a continuance, or enter such other order as he deems just under the circumstances.

(2) *Exclusion of Evidence.* The judge may in his discretion exclude evidence for noncompliance with a discovery order issued pursuant to this rule. *Testimony of the defendant* and evidence concerning the defense of lack of criminal responsibility *which is otherwise admissible cannot be excluded except as provided by subdivision (b)(2)* [dealing with the defense of lack of criminal responsibility] of this rule" (emphasis added).

[2]Article 12 of our Declaration of Rights guarantees that every person subject to a criminal prosecution "shall have a right [inter alia] . . . to be fully heard in his defense by himself, or his counsel, at his election." See G. L. c. 263, § 5, mandating that "A person accused of crime shall at his trial, be allowed to be heard by counsel [and] to defend himself."

birth, any alibi witnesses. As of the day of trial, the defendant had not provided such information to the Commonwealth.

Just after the case was called for trial, on May 30, 1997, defense counsel moved for a continuance until "later in the summer." He asserted that the defendant would testify that he was in Florida at the time the incidents in question occurred and that, if given more time, he could produce unspecified witnesses to support that alibi. Defense counsel concededly had been aware of the claimed alibi at least nine months earlier and had had ample opportunity for investigation and preparation (which included obtaining public funds to hire a private investigator over seven months earlier). The judge accordingly denied the motion (a ruling not contested by the defendant, compare *Commonwealth* v. *Porcher*, 26 Mass. App. Ct. 517, 518-520 [1988]), and the case proceeded to trial.

The Commonwealth elicited testimony from the victim and the two investigating officers to the effect that on the evening of June 14, 1996, the defendant had threatened and later beaten the victim (a YMCA desk attendant) as she walked home because she had prevented him from entering the YMCA to take a shower as the facility was closing. (The defendant was not apprehended until a month later when he appeared at the YMCA to take a shower.) During his cross-examination, defense counsel emphasized discrepancies in the victim's description of her assailant and the probability of her mistaken identification of the defendant.

At the close of the Commonwealth's case, defense counsel at side bar entered his "exception" to what he assumed had been the judge's pretrial ruling prohibiting any testimony regarding the defendant's claimed alibi.[3] The judge correctly responded that counsel was free to call the defendant as a witness and to ask him "anything you want, and he can respond accordingly." See note 1, *supra*, Mass.R.Crim.P. 14(b)(1)(D) and (c)(2); *Commonwealth* v. *Edgerly*, 372 Mass. 337, 344 (1997); *Commonwealth* v. *Guadalupe*, 23 Mass. App. Ct. 97, 100 (1986). The judge went on, however, to state that "I'm not permitting you to present an alibi defense . . . . I don't want you to present an alibi defense in your closing." In response to defense counsel's protestation that in his closing he would want to com-

---

[3]Defense counsel's mistaken assumption had been reflected in his failure to mention the defendant's alibi in his opening statement, which focused instead on misidentification.

ment on and "go over all the testimony," the judge warned that he would "have to interrupt" counsel should he attempt "to do an alibi defense closing."

Following that exchange, the defendant took the stand to testify that he had never seen the victim before and had been living and working in Florida on the date of the crimes charged.[4] He admitted, however, on a brief cross-examination, that he had no receipts or other documentation reflecting his trips to and from Florida or his stay in Florida. In his closing argument, defense counsel complied with the judge's forceful admonition and said nothing about the defendant's alibi or his testimony about having been in Florida at the critical time, but rather stressed the theme of the victim's inaccurate description of the defendant to the police and her mistaken identification while under the stress of the physical assault. The prosecutor, however, concluded his summation by mocking the defendant's "convenient," "self-serving," and undocumented claim to have been in Florida as "an incredibility." When defense counsel rose to object to these remarks, the judge ordered him to "sit down."[5]

The judge's preclusion of defense counsel's mentioning the

---

[4]In response to his counsel's questions (where he had been on the day in question, whether he could have seen the victim on that day, and whether he was the person who had threatened and punched the victim), the defendant thrice insisted that he had been in Florida. After the third such statement, the prosecutor objected. Following an inaudible and untranscribed side bar conference, defense counsel asked the defendant, "So, you didn't go into the YMCA on June 14th. Right?" Upon the defendant's answer ("No, sir"), the judge, sua sponte, interrupted the direct examination, telling defense counsel at side bar, "If you ask any further questions that give him an opportunity to say that he was in Florida [ . . .] jury some instructions [ . . .] strike it" (the balance of the side bar was inaudible and not transcribed). Counsel then terminated the direct examination with two innocuous questions. Because the defendant does not assign the judge's apparent determination to limit the defendant's own alibi testimony, as well as the insufficient state of the record, we do not address what might well have been a violation of rule 14's explicit provision that the defendant's right to testify in his own behalf as to an alibi is not to be limited.

[5]Again, no independent attack has been mounted on appeal to this peremptory judicial action. Additionally, no error is argued as to the judge's failure to charge with respect to the alibi issue raised by the defendant's testimony (but see *infra* at 677), nor as to any other questionable aspect of the instructions, e.g., telling the jury that they could take into account the strength of the identification. See *Commonwealth* v. *Santoli*, 424 Mass. 837, 845-846 (1997), disapproving of such language, released over three weeks before the trial.

defendant's testimonial alibi in closing argument constituted prejudicial error. The defendant's alibi that he was in Florida on the day the victim was attacked was properly in evidence — under article 12 and rule 14, the judge could not lawfully exclude or limit it. Consequently, defense counsel had every right to make a closing argument based upon and referring to that testimony and all fair inferences which could be drawn therefrom. See *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1971) (Hennessey, C.J., concurring); *Commonwealth* v. *Freeman*, 430 Mass. 111, 118 (1999). The judge's challenged ruling deprived the defendant of one of the most critical elements of his constitutional rights in a criminal trial: "the opportunity finally to marshal the evidence" in his favor and "to sharpen and clarify the issues for resolution by the trier of fact." *Herring* v. *New York*, 422 U.S. 853, 862 (1975).

However broad the discretion of the trial judge may be to limit the scope of closings so as to guard against repetitive, redundant, and otherwise improper arguments to the jury, see *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 56 (1975), such power cannot extend to total preclusion of relevant arguments that "remain within the bounds of the evidence and the fair inferences from the evidence." *Commonwealth* v. *Pettie*, 363 Mass. 836, 840 (1973). Cf. *Herring* v. *New York*, 422 U.S. at 859, 863; *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 13, 22-23 (1986) (denial of the opportunity to make a closing argument is unconstitutionally erroneous and per se prejudicial). Within those bounds, counsel is entitled "to assist the jury in their task of analyzing, evaluating, and applying [the] evidence . . . [to suggest] what conclusions the jury should draw from the evidence . . . [and to] 'fit all the pieces together so that they form a comprehensive and comprehensible picture for the jury.' " *Commonwealth* v. *Ferreira*, 381 Mass. 306, 316 (1980). The elimination from defense counsel's closing of an argument founded upon testimony that was not merely relevant but essential to the defense to rebut the Commonwealth's case in chief — even if such restriction did not wholly foreclose a summation — requires that the judgment of conviction be reversed. See *Commonwealth* v. *Bennett*, 6 Mass. App. Ct. 832 (1978).

The judge's circumscription of defense counsel's closing was especially prejudicial in this case for two related reasons. First, the issue of credibility was fundamental to both sides of the trial: the victim's, as to the defendant being the assailant, and

the defendant's, as to his alibi. By depriving defense counsel of the ability to argue the credibility of the defendant's alibi based upon his testimony and his demeanor, the judge wrongfully excluded argument that "it [was] certainly proper for counsel to" make. *Commonwealth* v. *Freeman*, 430 Mass. at 118. In the face of the prosecution's closing, explicitly deriding the defendant's claim to have been in Florida, defense counsel's coerced failure to have made any mention of the defendant's testimony, much less his claimed alibi, effectively discredited the defendant. To the jury, it could well be taken as implying defense counsel's disbelief of his own client's testimony. Compare. *Commonwealth* v. *Triplett*, 398 Mass. 561, 569 (1986); *Commonwealth* v. *Sarvela*, 16 Mass. App. Ct. 934, 935 (1983).

Had defense counsel acted voluntarily and in the absence of judicial compulsion, so grave and fundamental an omission would have deprived the defendant of an otherwise available, substantial ground of defense, and would be deemed ineffective assistance of counsel, particularly in a close case amounting to a duel of credibility.[6] See *Triplett, supra*; *Sarvela, supra*. See also *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 273-274 (1983); *Commonwealth* v. *Street*, 388 Mass. 281, 287-288 (1983); *Commonwealth* v. *Haggerty*, 400 Mass. 437, 441-442 (1987); *Commonwealth* v. *Cepulonis*, 9 Mass. App. Ct. 302, 305 (1980); *Commonwealth* v. *Aviles*, 31 Mass. App. Ct. 244, 248 (1991). We can see no principled distinction between the identical result being brought about by judicial act rather than by attorney oversight or misjudgment.

In this connection, we reject the Commonwealth's contention that no harm was done because defense counsel argued "the defense of misidentification [which] is indistinguishable from the defense of alibi." These "defenses" are conceptually distinct, compare Model Jury Instructions for Use in the District

---

[6]"The Commonwealth's case turned entirely on identification evidence, the potential for unreliability of which is well recognized; there was no (or virtually no) corroboration." This observation from *Commonwealth* v. *Rossi*, 19 Mass. App. Ct. 257, 259-260 (1985), is equally applicable here. The victim — the sole eyewitness at trial — had been unable to identify her assailant (who had jumped out at her from a side street and struck her as she walked home after 10:00 p.m. in the evening, then fled into the Fenway area of Boston) from police photographs and had, while emotionally upset, given police a description of the assailant that failed to match distinctive features of the defendant (e.g., blue, not brown eyes, and an unnoticed deformed ear), whom she had never seen prior to the YMCA incident.

Court 6.01 and 6.05 (1995 ed.), even if frequently interrelated. Indeed, those very qualities were insightfully noted in a situation analogous to the present case and similarly indicative of prejudice to the defendant:

> "While trial counsel did not leave the defendant without *any* defense . . . his failure even to mention the alibi evidence [testified to by the defendant] in his closing argument necessarily diminished, perhaps materially, the impact of the misidentification defense [which counsel did argue to the jury]. The two defenses were mutually reinforcing, and the unexplained jettisoning of one defense clearly jeopardized the credibility of the related defense."

*Commonwealth* v. *Aviles*, 31 Mass. App. Ct. at 248.

Finally, the prejudice attendant upon the judge's error in foreclosing argument on the defendant's alibi defense was exacerbated by his failure — more accurately, his implicit refusal — to instruct the jury on the alibi issue.[7] Such an instruction, in its current, more balanced, form might have inclined the jury to a more critical assessment of the Commonwealth's case that could have influenced the "reasonable doubt" analysis in the defendant's favor, particularly given the less-than-overwhelming character (see note 6, *supra*) of the Commonwealth's evidence.[8]

---

[7]In view of the judge's emphatic suppression of any mention of an alibi defense, defense counsel's failure to request such an instruction was understandable.

[8]See *Commonwealth* v. *McLeod*, 367 Mass. 500, 502 & n.1 (1975); *Commonwealth* v. *Ramey*, 368 Mass. 109, 114-115 (1975); *Commonwealth* v. *Bowden*, 379 Mass. 472, 479-482 (1980); Model Jury Instructions for Use in the District Court 6.01 ("You have heard testimony suggesting that the defendant was not present at the place and time when the offense charged in the complaint is alleged to have occurred. Such testimony is commonly referred to as alibi evidence. *Now I caution you not to give the word "alibi" any sinister connotation. It is only a shorthand phrase for a very important issue in this case*: did the defendant commit the crime as charged, or was he . . . elsewhere at the time and therefore necessarily innocent? In considering this matter, please *remember that the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant committed the offense charged,* and of course that includes proving that the defendant was present at the scene and not somewhere else at the time. *The defendant has no duty to call witnesses or produce evidence on this or any other element of the crime.* [If there was evidence of a complete alibi] In this case you have heard evidence suggesting that the defendant was [*where*] at the time when this of-

The judgments of the District Court are reversed and the verdicts are set aside.[9]

*So ordered.*

.

.

---

fense was committed. You will have to decide whether or not you believe that evidence. Obviously, *if you believe it, then the Commonwealth has failed to prove the defendant's guilt beyond a reasonable doubt and you must find him . . . not guilty. But even if you disbelieve some or all of that evidence, that doesn't mean that the defendant is automatically guilty.* You still have to find, on all the evidence, that the Commonwealth has proved the defendant's guilt *beyond a reasonable doubt. Please give this issue your careful consideration, since in some cases an alibi may be the only refuge of an innocent person.* After you consider all the evidence, if the Commonwealth has proved beyond a reasonable doubt that the defendant was present and committed the crime as charged, you should find the defendant guilty. On the other hand, if you have a *reasonable doubt* about whether the defendant was present at the time and place of the offense, or about any other element of the crime, then you must find him . . . not guilty") (emphasis added). Notwithstanding the defendant's failure to have preserved this issue for appellate review or argued it in his brief, we may consider it as apparent on the record. *Commonwealth* v. *Simpson*, 428 Mass. 646, 648-649 (1999).

[9]The defendant filed a motion for a new trial, claiming ineffective assistance of counsel (for failure to present evidence from witnesses who could allegedly have corroborated his Florida alibi), a year after his conviction. The motion was heard and denied by the trial judge. The defendant's appeal from the denial of his new trial motion was consolidated, on the Commonwealth's motion, with his direct appeal in November, 1998. In light of our foregoing reasoning and the unique circumstances of this case, we are not persuaded that the judge erred in rejecting the contention that defense counsel was ineffective, but we need not separately address the issue and dismiss the appeal of the denial of the new trial motion as moot.